FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
-------------------------------------------------------------------X
LANDMARK AMERICAN INSURANCE COMPANY

                      Plaintiff,

              -against-

SIEGFRIED, RIVERA, HYMAN, LERNER, DE LA
TORRE, MARS & SOBEL, P.A.,

                    Defendant,

             -and-

WCI Communities, Inc. (f/k/a WCI 2009 Corporation)

                   Nominal Defendant.
-------------------------------------------------------------------X

15 MAR 11  PM 1:52

CLER...
MIDDLE D...
FT. MYERS. FLORIDA

Civil Action No._____

**COMPLAINT FOR
DECLARATORY
JUDGMENT**

2:15-cv-164-FtM-38DNF

      Plaintiff Landmark American Insurance Company ("Landmark") by and through its undersigned attorneys, as and for its Complaint for Declaratory Judgment against Siegfried, Rivera, Hyman, Lerner, De La Torre, Mars & Sobel, P.A. ("Siegfried Rivera") and WCI Communities, Inc. (f/k/a WCI 2009 Corporation), alleges as follows:

## NATURE OF THE ACTION

      1.     This is an action for a declaratory judgment arising out of an actual and existing controversy of a justiciable nature concerning the parties' rights and obligations under a Lawyers Professional Liability Insurance Policy issued to Siegfried Rivera by Landmark, in connection with a Claim as identified herein.

      2.     Landmark is entitled to a declaration that there is no coverage available under the Policy for any amounts related to the Claim, based upon the terms, conditions, and exclusions of the Policy as identified herein.

2915828

## THE PARTIES

3.      Landmark is a corporation organized and existing under the laws of the State of Oklahoma, with its principal place of business in Atlanta, Georgia.

4.      Upon information and belief, Siegfried Rivera is a professional service corporation organized and existing under the laws of the State of Florida, doing business in Florida, with its principal place of business in Coral Gables, Florida.

5.      Upon information and belief, WCI Communities, Inc., f/k/a WCI 2009 Corporation ("New WCI") is a corporation organized and existing under the laws of the State of Delaware, doing business in the State of Florida, with its principal place of business in Bonita Springs, Florida.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2201 and § 1332, as amended.  This matter involves a dispute between citizens of different states and the value in controversy exceeds $75,000, exclusive of interests and costs.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Siegfried Rivera has sufficient contacts with this district and New WCI has its principal place of business in this district.

8.      This is an action filed pursuant to 28 U.S.C. § 1332, as well as the Declaratory Judgment Act and Rule 57 of the Federal Rules of Civil Procedure.

9.      As shown below, there is a justiciable controversy that requires the Court to declare the rights, remedies, obligations and liabilities of the parties.

2

2915828

## THE UNDERLYING CLAIM

10.    Upon information and belief, in 2006, WCI Communities, Inc. ("WCI"),[1] along with its affiliated entities, including Communities Finance Company, LLC ("CFC") and WCI Architecture & Land Planning, Inc. ("WCI Architecture"), was a pre-eminent, fully integrated homebuilding and real estate services company that designed, constructed and operated master-planned communities throughout Florida (collectively, WCI and its affiliates may hereinafter be referred to as "WCI" or the "Developer").

11.    Upon information and belief, WCI contracted to develop a 365-unit condominium community in West Palm Beach, Florida, known as CitySide ("CitySide" or the "Condominium"), the construction of which was completed on September 15, 2006, when all certificates of occupancy for CitySide had been issued by the City of West Palm Beach.

12.    Upon information and belief, in connection with the development of CitySide, the CitySide Condominium Association, Inc. (the "CitySide Condo Association") was formed in June 2005, after CFC recorded the appropriate documents, including the CitySide Condo Association's Articles of Incorporation and By-Laws.

13.    Upon information and belief, in November 2006, WCI turned-over management of CitySide and the CitySide Condo Association to the Condominium's unit owners (the "Turnover").

14.    Upon information and belief, in connection with the Turnover, the CitySide Condo Association identified certain defects in the construction of the Condominium and

---

[1] New WCI is the successor in interest to WCI. For purposes of this Complaint, either or both are referenced as WCI, as appropriate.

2915828

retained Slider Engineering Group, Inc. ("Slider Engineering"), to review the design and inspect the construction.

15.     Upon information and belief, beginning after the Turnover in December 2006, the CitySide Condo Association, through its counsel, Siegfried Rivera, began negotiating with WCI to resolve and settle the disputes relating to the alleged construction defects in the Condominium.

16.     On December 5, 2007, Slider Engineering issued its comprehensive engineering report regarding the Condominium, which identified several alleged defects in the Condominium's construction and design (the "Engineering Report"). The Engineering Report is attached as Exhibit A.

17.     Upon information and belief, the parties continued their attempts to resolve the issues relating to the construction defects in the Condominium into 2008. In fact, on July 29, 2008, WCI issued, by email, a proposed settlement agreement to Siegfried Rivera attempting to resolve the construction defect issues (the "Proposed Settlement Agreement").

18.     Upon information and belief, the Proposed Settlement Agreement was never finalized or executed.

19.     On August 4, 2008, only days after WCI issued the Proposed Settlement Agreement, WCI and 126 of its direct and indirect subsidiaries, including CFC and WCI Architecture (as they may hereinafter be referred to as the "Debtors"), filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

20.     On July 1, 2009, the Debtors filed their *Second Amended Joint Chapter 11 Plan of Reorganization for WCI Communities, Inc. and its Affiliated Debtors* (the "Reorganization

4

2915828

Plan"), as well as their *Second Amended Disclosure Statement Relating to the Second Amended Joint Chapter 11 Plan of Reorganization for WCI Communities, Inc. and its Affiliated Debtors* (the "Disclosure Statement").

21.     On July 17, 2009, the Bankruptcy Court approved the Disclosure Statement.

22.     On August 26, 2009, after the period for filing and serving all objections to the Reorganization Plan had run, the Bankruptcy Court entered an Order confirming the Reorganization Plan (the "Confirmation Order").

23.     The Reorganization Plan became effective on September 30, 2009.

24.     On November 14, 2013 (over 4 years after the effective date of the Reorganization Plan), Siegfried Rivera, on behalf of the CitySide Condo Association, issued four notices of claim and formal demands under Chapter 558 of the Florida Statutes (collectively, the "Florida 558 Notices of Claim").[2] The Florida 558 Notices of Claim are attached as Exhibit B.

25.     The Florida 558 Notices of Claim alleged latent construction defects in the Condominium and demanded that WCI repair the alleged defects.

26.     In response to the Florida 558 Notices of Claim, on December 18, 2013, WCI issued a letter to Siegfried Rivera (the "WCI December 2013 Demand Letter"). The WCI December 2013 Demand Letter is annexed hereto as Exhibit C.

27.     The WCI December 2013 Demand Letter notified Siegfried Rivera that the Florida 558 Notices of Claim violated the Bankruptcy Court's Orders, and, more generally, the Bankruptcy Code, and should have been brought as claims during the bankruptcy proceedings.

---

[2] The Florida 558 Notices of Claim were all substantively identical to each other, the only differences among them were the WCI entities that they were addressed to and the corresponding addresses they were sent to. In this regard, one letter was addressed to WCI, one letter was addressed to CFC, and two letters, with different addresses, were addressed to WCI Architecture.

2915828

The WCI December 2013 Demand Letter further advised Siegfried Rivera that these alleged violations were sanctionable and demanded that Siegfried Rivera immediately cease making such demands, otherwise WCI would "immediately pursue any and all remedies available in the Bankruptcy Court, including, without limitation, enforcement of the Confirmation Order, prosecution of claims for contempt for violation of the Confirmation Order, and for attorneys' fees."

28.     Despite the WCI December 2013 Demand Letter, on December 3, 2014, Siegfried Rivera, on behalf of the CitySide Condo Association, filed a complaint against WCI, WCI Architecture, and CFC in the Circuit Court for the 15th Judicial Circuit in Palm Beach County, Florida, Case No. 2014CA014421 (the "Florida State Court Action").  The Florida State Court Action alleged claims for breach of implied warranty pursuant to Florida statute, negligence, and professional negligence, all of which stemmed from WCI's design and construction of CitySide. The Florida State Court Action is attached as Exhibit D.

29.     Following Siegfried Rivera's filing of the Florida State Court Action, WCI (actually, New WCI), just as it had indicated it would do in its December 2013 Demand Letter, filed its *Complaint for Civil Contempt, Declaratory Judgment, and Breach of Contract* against the CitySide Condo Association and Siegfried Rivera in the Bankruptcy Court as an adversary proceeding related to the WCI bankruptcy, styled *WCI Communities, Inc. (f/k/a WCI 2009 Corporation) v. CitySide Condominium Association, Inc., and Siegfried, Rivera, Hyman, Lerner, De La Torre, Mars & Sobel, P.A.*, Adversary Case No. ____ (under *In re WCI Communities, Inc.*

6

2915828

*et al.*, Case No. 08-11643 (KJC)) (the "Underlying Complaint").[3]  The Underlying Complaint is attached as Exhibit E.

## THE INSURANCE POLICY

30.     Landmark issued Lawyers Professional Liability Insurance Policy No. LHR743169 to Siegfried, Rivera, Hyman, Lerner, De La Torre, Mars & Sobel, P.A., for the Policy Period of January 15, 2014 to January 15, 2015 (the "Policy").   The Policy (the application is removed)[4] is attached as Exhibit F.

31.     Subject to the terms, conditions, exclusions, and endorsements, the Policy provides coverage, pursuant to Insuring Agreement I.A., as follows:

**Part I.    Insuring Agreements**

**A.  Covered Services**

The Company will pay on behalf of the Insured as shown in the Declarations, all sums that the Insured becomes legally obligated to pay as **Damages** and associated **Claim Expenses** arising out of a negligent act, error, omission, or **Personal Injury**, even if such **Claim** asserted is groundless, false or fraudulent, in the rendering of or failure to render **Professional Services** as a Lawyer, provided that the:

1.  **Claim** is first made against the Insured during the **Policy Period**, and reported to the Company no later than thirty (30) days after the end of the **Policy Period**;

2.  Negligent act, error or omission or **Personal Injury** took place in a covered territory;

3.  Negligent act, error or omission or **Personal Injury** took place after the **Retroactive Date** shown in the Declarations[.]

---

[3] New WCI is named as a nominal defendant in this Complaint solely because it is the claimant in the Underlying Complaint and, as such, arguably is a necessary party.
[4] The application has been removed from this filing to protect the privacy and confidentiality of the Insured.

2915828

32.     Siegfried Rivera is the Named Insured shown in the Declarations and is a "Covered Entity" under the Policy pursuant to Section I.E. (the "Insured").

33.     Section III.I. of the Policy defines "Professional Services" as "only services performed for others by an Insured as a lawyer, notary public, administrator, conservator, executor, guardian, guardian ad litem, arbitrator, mediator, trustee, and title insurance agent."

34.     Pursuant to Section III.B. of the Policy, as modified by endorsement, "Claim" means "a written demand, including any incident, occurrence or offense which may reasonably be expected to result in a claim, received by the Insured for money or services, including service of suit or institution of arbitration proceeding against the Insured."

35.     Pursuant to Section I.C. of the Policy:

> . . . In the event two or more **Claims** arise out of a single negligent act, error or omission, or a series of related negligent acts, errors or omissions, all such **Claims** shall be treated as a single **Claim**. Whenever made, all such **Claims** shall be considered first made and reported to the Company during the **Policy Period** in which the earliest **Claim** arising out of such negligent act, error or omission was first made and reported to the Company, and all such **Claims** shall be subject to the same Limit of Liability.

36.     The WCI December 2013 Demand Letter constitutes a "Claim" as defined by the Policy.

37.     The Underlying Complaint arises out of the same negligent act, error or omission or series of related negligent acts, errors or omissions as the WCI December 2013 Demand Letter.  As such, the Underlying Complaint and the WCI December 2013 Demand Letter together constitute the single underlying "Claim" (the "Claim").

38.     Exclusion G. of the Policy (the "Prior Knowledge Exclusion") provides that the Policy:

8

does not apply to any **Claim** or **Claim Expenses** based upon or arising out of [a]ny alleged act, error, omission, **Personal Injury** or circumstance likely to give rise to a **Claim** that an Insured had knowledge of prior to the effective date of this policy. This exclusion includes, but is not limited to, any prior **Claim** or possible **Claim** referenced in the Insured's application.

39.     The effective date of the Policy is January 15, 2014.

40.     Upon information and belief, Siegfried Rivera received the WCI December 2013 Demand Letter prior to January 15, 2014.

41.     Exclusion V. of the Policy provides that the Policy:

does not apply to any **Claim** or **Claim Expenses** based upon or arising out of . . . [a]ny **Claim** or litigation against any Insured occurring prior to, or pending as of the inception date of this policy including (but not limited to), **Claims**, demands, causes of actions, legal or quasi-legal proceedings, decrees, or judgments; or any subsequent litigation or **Claims** arising from or based on substantially the same matters as alleged in the pleadings of such prior or pending litigation; or any act, error, omission or **Personal Injury** of any insured(s) which gave rise to such prior or pending litigation or **Claims**.

42.     Exclusion A. of the Policy provides that the Policy:

does not apply to any **Claim** or **Claim Expenses** based upon or arising out of . . . [d]ishonest, fraudulent, criminal or intentional acts, errors or omissions committed by or at the direction of the Insured.

43.     The Underlying Complaint alleges intentional acts, errors or omissions by or at the direction of the Insured.

2915828

**THE UNDERLYING COMPLAINT IS NOT COVERED BY THE POLICY BUT
LANDMARK HAS OFFERED TO DEFEND  PENDING DETERMINATION OF ITS
RIGHTS AND OBLIGATIONS IN THIS COVERAGE ACTION**

44.     On January 12, 2015, Siegfried Rivera, through its broker Socius Insurance Services Inc., submitted the Underlying Complaint to Landmark for coverage under the Policy.

45.     During the course of Landmark's investigation of coverage for the Underlying Complaint, Landmark discovered the WCI December 2013 Demand Letter (which was attached as Exhibit 1 to the Underlying Complaint) demanding that Siegfried Rivera cease and desist pursuing their claims in violation of the Bankruptcy Court's Orders and the Bankruptcy Code and advising Siegfried Rivera that WCI would bring claims for contempt against both it and the CitySide Condo Association if they failed to immediately do so.

46.     The Claim was first made on the date Siegfried Rivera received the WCI December 2013 Demand Letter, December 18, 2013, prior to the inception of the January 15, 2014 to January 15, 2015 Policy Period.

47.     The Insured had knowledge of the Claim, and, in any event, the alleged acts, errors, omissions, or circumstances that gave rise to the Claim, prior to January 15, 2014.

48.     Question 11 of the Policy Application's "Supplemental Questions for Lawyers" specifically asked: "After inquiry of all lawyers and all employees, have any claims, suits or demands been made during the past five years against the Applicant, its predecessor firms or any of the lawyers proposed for this insurance?"   Siegfried Rivera failed to disclose the WCI December 2013 Demand Letter in response to this application question.

49.     Question 12 of the Policy Application's "Supplemental Questions for Lawyers", specifically asked: "After inquiry of each lawyer, is the Applicant, its predecessor firms or any

10

lawyer proposed for this insurance aware of any fact or circumstance, act, error, omission or personal injury which might be expected to be the basis of a claim or suit for lawyers professional liability?" Siegfried Rivera failed to make any disclosure in response to this application question.

50.     The Claim does not trigger coverage under Insuring Agreement I.A. of the Policy, which requires that the Claim be *first* made during the January 15, 2014 to January 15, 2015 Policy Period.

51.     Even if the Claim had been first made during the Policy Period, any and all coverage would be excluded pursuant to the Prior Knowledge Exclusion, because Siegfried Rivera had knowledge of the circumstances that gave rise to the Claim prior to January 15, 2014.

52.     Even if the Claim had been first made during the Policy Period, any and all coverage would be excluded pursuant to Exclusion V. of the Policy.

53.     By letter dated January 27, 2015, Landmark advised the Insured that there was no coverage under the Policy for the Underlying Complaint. Landmark's January 27, 2015 letter is attached as Exhibit G.

54.     In response, by letter dated February 9, 2015, the Insured, through its counsel, Boyle, Gentile & Leonard, P.A. ("Boyle Gentile"), disputed Landmark's coverage determination. The February 9, 2015 letter is attached as Exhibit H.

55.     Landmark subsequently issued a letter advising the Insured that Landmark would be pursuing a declaratory judgment action to determine the parties' rights and obligations under the Policy and offering to defend Siegfried Rivera subject to a reservation of rights, including, specifically, the right to seek reimbursement of any amounts expended by Landmark on behalf of

2915828

Siegfried Rivera in the defense of the Underlying Complaint if Landmark ultimately prevails in the declaratory judgment action.

56.     Accordingly, Landmark and Siegfried Rivera dispute coverage for the Underlying Complaint under the Policy.

**COUNT I**
**DECLARATORY JUDGMENT**
**(The Underlying Complaint Does Not Trigger the Insuring Agreement)**

57.     Landmark restates and incorporates by reference each of the allegations set forth in Paragraphs 1 through 56 as if fully set forth herein.

58.     The satisfaction of the Insuring Agreement is a condition precedent to any coverage under the Policy.

59.     Insuring Agreement I.A. is only triggered if the Claim is first made during the Policy Period of January 15, 2014 to January 15, 2015.

60.     The Claim by WCI was first made when Siegfried Rivera received the WCI December 2013 Letter on December 18, 2013 – nearly a month before the inception of the January 15, 2014 to January 15, 2015 Policy Period.  As such, the Claim does not trigger coverage under Insuring Agreement I.A.

61.     Landmark is entitled to a declaration that the Policy does not provide coverage for the Claim, including a defense, and that Landmark has no duty to pay any "Claim Expenses" or "Damages" incurred in relation to the Claim, and has the right to seek reimbursement of any "Damages" or "Claim Expenses" paid in relation to the Underlying Complaint.

2915828

## COUNT II
## DECLARATORY JUDGMENT
### (Prior Knowledge Exclusion)

62.     Landmark restates and incorporates by reference each of the allegations set forth in Paragraphs 1 through 61 as if fully set forth herein.

63.     The Policy does not provide coverage for the Claim, and Landmark has no duty to defend or pay any "Damages" or "Claim Expenses" incurred in defending the Claim, because the Prior Knowledge Exclusion, which precludes coverage for "any **Claim** or **Claim Expenses** based upon or arising out of [a]ny alleged act, error, omission, **Personal Injury** or circumstance likely to give rise to a **Claim** that an Insured had knowledge of prior to the effective date of this policy," excludes coverage for the Claim, because the Insured had knowledge of circumstances that gave rise to the Claim at least as early as December 18, 2013, and, in any event, prior to January 15, 2014.

64.     Landmark is entitled to a declaration that the Policy does not provide coverage for the Claim, including a defense, and that Landmark has no duty to pay any "Claim Expenses" or "Damages" incurred in relation to the Claim, and has the right to seek reimbursement of any "Damages" or "Claim Expenses" paid in relation to the Underlying Complaint.

## COUNT III
## DECLARATORY JUDGMENT
### (Exclusion V of the Policy)

65.     Landmark restates and incorporates by reference each of the allegations set forth in Paragraphs 1 through 64 as if fully set forth herein.

66.     The Policy does not provide coverage for the Claim, and Landmark has no duty to pay any "Damages" or "Claim Expenses" incurred in defending the Claim, because Exclusion

2915828

V., which precludes coverage for "any **Claim** or **Claim Expenses** based upon or arising out of . . . [a]ny **Claim** or litigation against any Insured occurring prior to, or pending as of the inception date of this policy including (but not limited to), **Claims**, demands, causes of actions, legal or quasi-legal proceedings, decrees, or judgments; or any subsequent litigation or **Claims** arising from or based on substantially the same matters as alleged in the pleadings of such prior or pending litigation; or any act, error, omission or **Personal Injury** of any insured(s) which gave rise to such prior or pending litigation or **Claims**," excludes coverage for the Claim, which is based upon and/or arising out of a "Claim" or demand that was pending as of January 15, 2014.

67. Landmark is entitled to a declaration that the Policy does not provide coverage for the Claim, including a defense, and as such, Landmark has no duty to pay any "Damages" and "Claim Expenses" related to the Underlying Complaint, and has the right to seek reimbursement of any "Damages" or "Claim Expenses" paid in relation to the Underlying Complaint.

**COUNT IV**
**DECLARATORY JUDGMENT**
**(Exclusion A of the Policy)**

68. Landmark restates and incorporates by reference each of the allegations set forth in Paragraphs 1 through 67 as if fully set forth herein.

69. The Policy does not provide coverage for the Claim, and Landmark has no duty to pay any "Damages" or "Claim Expenses" incurred in defending the Claim, because Exclusion A., precludes coverage for "any **Claim** or **Claim Expenses** based upon or arising out of . . . [d]ishonest, fraudulent, criminal or intentional acts, errors or omissions committed by or at the direction of the Insured."

14

70.     The Claim alleges intentional acts, errors or omissions by or at the direction of the Insured and is, therefore, excluded from coverage under the Policy.

71.     Landmark is entitled to a declaration that the Policy does not provide coverage for the Claim, including a defense, and as such, Landmark has no duty to pay any "Damages" and "Claim Expenses" related to the Underlying Complaint, and has the right to seek reimbursement of any "Damages" or "Claim Expenses" paid in relation to the Underlying Complaint.

**WHEREFORE**, Landmark requests that this Court enter a declaration and final judgment in its favor against the Insured, and asks this Court to:

1)     Determine, decide, and declare the rights and liabilities of the parties with respect to the Policy;

2)     Determine, decide, and declare that there is no coverage under the Policy for any "Damages" or "Claim Expenses" incurred in connection with the Claim;

3)     Determine, decide, and declare that Landmark has no duty to defend the Insured against the Underlying Complaint;

4)     Determine, decide, and declare that Landmark may withdraw from its defense of the Insured against the Underlying Complaint;

5)     Determine, decide, and declare that Landmark has the right to seek reimbursement of any "Damages" or "Claim Expenses" in relation to its defense of the Underlying Complaint.

6)     Determine, decide, and declare that Landmark has no obligation to indemnify the Insured for any "Damages" or make any payment or reimbursement to the Insured for any "Claim Expenses" in connection with the Claim, including the Underlying Complaint; and

2915828

7)      Award Landmark any further relief that the Court deems just and proper.


Dated:  March 10, 2015

Respectfully submitted,


**KAPLAN ZEENA LLP**
Attorneys for Plaintiff *Landmark American Insurance
Company*
2 South Biscayne Blvd.
One Biscayne Tower
Suite 3050
Miami, FL  33131
Tel:    (305) 530-0800
Fax:    (305) 530-0801

By:   */s/ Rachel F. Kelman*

        JAMES M. KAPLAN
        james.kaplan@kaplanzeena.com
        Florida Bar No. 921040
        RACHEL F. KELMAN
        Florida Bar No. 18642
        Rachel.kelman@kaplanzeena.com


**KAUFMAN BORGEEST & RYAN LLP**


By:     */s/ Robert A. Benjamin*
        Robert A. Benjamin
        200 Summit Lake Drive
        Valhalla, NY 10595
        Tel: (914) 449-1000
        *Attorneys for Plaintiff Landmark American
        Insurance Company*
                *Pro Hac Vice Pending*


16

2915828